# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TED MIKULAK            :
                       :
          **Plaintiff,**      :      3:15-CV-2330
     v.                  :      **(JUDGE MARIANI)**
                       :
JANINE EDWARDS      :
                       :
          **Defendant.**      :

pen

FILED
SCRANTON

SEP 25 2018

PER_____
         DEPUTY CLERK

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 30) by

Magistrate Judge Carlson in which he recommends that Defendant Janine Edwards' motion

for summary judgment (Doc. 22) be granted. Plaintiff Ted Mikulak has filed Objections

(Doc. 31) to the Magistrate Judge's R&R and a brief in support of the Objections (Doc. 32),

to which Defendant Edwards filed a response (Doc. 36). Thereafter at the request of this

Court (Doc. 37), Defendant (Doc. 40) and Plaintiff (Doc. 41) filed Supplemental Briefs

limited to the issue of whether any genuine disputes of material fact exist as to the liability of

Janine Edwards in her official capacity, *i.e.* Wayne County, with respect to Counts I and II of

Plaintiff's Complaint.

On December 8, 2015, Plaintiff Ted Mikulak filed a Complaint in the above-captioned

matter setting forth three Counts against Defendant Janine Edwards in her official and

individual capacity: "Violation of Plaintiff's Constitutional Right to be Free from Injury to

Reputation and Given Due Process Stigma-Plus Claim & Straight Due Process Claim" (Count I); First Amendment Retaliation (Count II); and False Light & Defamation (Count III). (Doc. 1).

Following the denial of Defendant's Motion to Dismiss by this Court (Doc. 20), Defendant filed an Answer (Doc. 21) and Motion for Summary Judgment (Doc. 22). The Court subsequently referred Defendant's motion for summary judgment to Magistrate Judge Carlson for the preparation of a Report and Recommendation. On December 22, 2017, the Magistrate Judge issued the R&R (Doc. 30) presently before this Court.

## II. ANALYSIS

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also, Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); M.D. Pa. Local Rule 72.3.

Here, Plaintiff objects to the Magistrate Judge's R&R "in its entirety." (Doc. 31, at ¶ 1). Specifically, in his brief in support of his Objections, Plaintiff argues (1) the Magistrate Judge erred in concluding that "the letter to Judge Hamill" was a judicial document; (2) Defendant is not entitled to qualified immunity; (3) prosecutorial absolute immunity was not

2

established; (4) "[t]here was no judicial proceeding that would excuse Defendant Edwards from writing a defamatory letter and statement to the press barring a state claim of defamation and false light"; (5) Defendant Edwards made statements that were defamatory and placed Plaintiff in a false light to the public; (6) Defendant Edwards' speech and actions are not protected by any conditional privilege; (7) Plaintiff only brought a procedural due process and stigma-plus claim, not a substantive due process claim, and defendant did not move for summary judgment on that basis and therefore that claim must survive; and (8) Plaintiff stated a First Amendment retaliation claim. (Doc. 32).

In addressing Plaintiff's Objections, *infra*, for purposes of clarity, the Court will not do so in the order presented by Plaintiff.

### Objection 7 – Plaintiff brought procedural due process and stigma-plus claims, which Defendant Edwards did not challenge

Plaintiff argues that Edwards moved for dismissal "solely on a substantive due process claim" and that he "has not alleged that he was denied a substantive due process claim, but rather a procedural due process claim and stigma plus" and thus Plaintiff's procedural due process and stigma-plus claims should be allowed to proceed to trial. (Doc. 32, at 18).

This issue now raised by Plaintiff is the result of his deficient pleading and shifting tactics. Count I of Plaintiff's Complaint is entitled "Violation of Plaintiff's Constitutional Right to be Free from Injury to Reputation and Given Due Process Stigma-Plus Claim & Straight Due Process Claim." (Doc. 1, at 3). Nowhere in this Count, or in the entire Complaint, does

3

Plaintiff attempt to make clear whether he is alleging a procedural due process claim, substantive due process claim, or both. The only fact that is apparent with respect to the substance of this claim is that he is asserting that he had a property interest in his position as a magistrate judge for the duration of his six year term. Instead, Plaintiff waited for Defendant to file a motion for summary judgment on that Count, and then merely asserted that he was bringing a claim for the due process claim not addressed by Defendant.

Nonetheless, here, and in light of Plaintiff's assertions with respect to the claims he argues he brought in Count I of his Complaint, Plaintiff has set forth two procedural due process claims: (1) a deprivation of his property interest in his position as a magistrate judge for his six year elected term; and (2) a stigma-plus claim.[1]

Although the allegations are sparse, Count I of Plaintiff's Complaint asserts that Plaintiff had a "property interest in his position [as judge for magisterial district 22-3-02] for th[e] duration" of his six year term. (Doc. 1, at ¶ 9). Plaintiff asserts that, after he was notified in January 21, 2015, by the Judicial Conduct Board that all complaints against him had been dismissed[2], he was still not "allowed to perform the entire position he was elected to perform," including "handling matters generated from the Honesdale Borough Police Department", and that he was told that Edwards "was keeping him from performing the job

---

[1] In light of Plaintiff's assertion that he did not bring a substantive due process claim, the Court must conclude that Plaintiff's stigma-plus claim is brought as a procedural due process claim.

[2] The "notice" from the Judicial Conduct Board to which Plaintiff refers is the letter of its Chief Counsel Robert A. Graci (Doc. 22-1, "Ex. 4 Mikulak"). That letter begins with the statement that "[t]he purpose of this letter is to inform you that your one-year term of probation and mentorship regarding the above-complaint numbers is complete."

he was elected to do." (*Id.* at ¶¶ 10-12). Plaintiff further alleges that Edwards authored a "defamatory letter impugning Plaintiff's reputation" and "demand[ing] that President Judge Hamill keep Plaintiff from engaging in his elected position of magisterial district judge" and that subsequently, in May, 2015, three days before the primary election was to occur for Mikulak's reelection, Edwards "again spoke and wrote a defamatory letter to the newspaper. . . ." (*Id.* at ¶¶ 13, 15). Plaintiff asserts that he "has continually requested a hearing to discuss why he cannot perform the elected position as designated, but has been rebuffed and criticized by Defendant Edwards, thereby making it impossible to perform the entire duties of the position that the people have elected him to perform." (*Id.* at ¶ 17).

The Court takes judicial notice of the fact that on May 19, 2015, Plaintiff lost the primary election in Wayne County, PA, to be the democratic and/or republican nominee for the magistrate judge position for district 22-3-02. *See* Wayne County, PA, "Municipal Election Results", Archive, 2015 Municipal Primary, https://waynecountypa.gov/Archive.aspx?AMID=37.

The Court will first address Plaintiff's procedural due process claim.[3]

---

[3] In light of Plaintiff's assertion that he is only bringing a procedural due process claim, not a substantive due process claim, to clarify the precise contours of Plaintiff's claim, the Court briefly examines the difference between substantive and procedural due process. The Supreme Court has explained the distinction between the two as follows:

> We have emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41 L. Ed. 2d 935 (1974), whether the fault lies in a denial of fundamental procedural fairness, *see, e.g., Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed. 2d 556 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, *see, e.g., Daniels v. Williams*, 474 U.S. [327,] 331, 106 S.Ct. [662,] 664[, 88 L.Ed.2d 662 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised).

"The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). "As such, the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F.Supp.2d 389, 397-98 (E.D. Pa. 2012).

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."[4] *Hill v. Borough of*

---

*Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). The undersigned previously had occasion to add to this analysis:

> Thus, to the extent that Plaintiff challenges the procedures by which she was allegedly deprived of her property interests, she raises a procedural due process claim. On the other hand, to the extent that she alleges that the Defendants used government power "for the purposes of oppression," regardless of the fairness of the procedures by which they used it, *see Daniels*, 474 U.S. at 331, 106 S.Ct. 665, she states a substantive due process claim.

*Fanti v. Weinstock*, 2014 WL 5586348, at *5 (M.D. Pa. 2014), *aff'd*, 629 F. App'x 325 (3d Cir. 2015).

[4] In addition, the claimed deprivation must have been committed by a person acting under color of state law. *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power

*Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (internal citation and quotation marks omitted). "Due Process is flexible and calls for such procedural protection as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 324 (1976).

Here, Plaintiff's procedural due process claim is premised on his purported property interest in his position as a magisterial district judge for the duration of his six year elected term, *i.e.* being allowed to "perform[ ] the entire position he was elected to perform" including "handling matters generated from the Honesdale Borough Police Department". (*See* Doc. 1, at ¶¶ 7-17).

With respect to whether Mikulak has a property interest in the position he held of Magisterial District Judge, Article V, section 18, of the Pennsylvania Constitution is instructive. This section establishes a Judicial Conduct Board which receives and investigates "complaints regarding judicial conduct filed by individuals or initiated by the board," and determines whether there is probable cause to file formal charges against a justice, judge or justice of the peace for "conduct proscribed by this section" and to "present the case in support of the charges before the Court of Judicial Discipline." (Pa. Const. art 5, §18(a)(7)). Thereafter, should the Board find probable cause to file formal charges, the matter is brought to the Court of Judicial Discipline where the parties appearing before the Court have a right to a hearing and a decision by the Court of Judicial Discipline containing findings of fact and conclusions of law. (*Id.* at (b)(5)).

---

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citation and quotation marks omitted).

Pursuant to section 18, a "justice, judge or justice of the peace shall have the right to appeal a final adverse order of the discipline of the court." (*Id.* at (c)).[5] Thus, a magisterial judge clearly has protections from suspension, removal and discipline or other sanctions where a matter is brought before the Judicial Conduct Board. In this sense, it may be said that Plaintiff has sufficient protection against suspension, removal or discipline under state law to warrant the assertion that the Pennsylvania Constitution has conferred upon him a property interest in his judicial position.

Nonetheless, Mikulak suffered no suspension, removal, or discipline in this case. Instead, as the Magistrate Judge explained in his R&R in describing the origins of this suit:

> The dispute grew out of concern by the District Attorney that the plaintiff had publically made statements that threw into question his impartiality with respect to a local police department. This resulted in an inquiry by Pennsylvania's Judicial Conduct Board, which the plaintiff claims ultimately cleared him of misconduct following a one-year probationary period.

(Doc. 30, at 1-2).

Thus, assuming the protections afforded to a magisterial judge under the provisions of article V, § 18, of the Pennsylvania Constitution confer a property interest upon the Plaintiff, entitling him to notice and hearing in accordance with the provisions of section 18, Plaintiff was afforded procedural due process in this matter.

Given, however, that Mikulak has brought this action against then-District Attorney, Janine Edwards, the analysis as to whether Plaintiff had a property interest in his position

---

[5] "Justice of the peace" is deemed to be a reference to a magisterial district judge. Pa. Const. art 5, § 18(a)(1)n.1.

and suffered a deprivation of that interest without due process invites an analysis that is not necessary in this case. Here, Plaintiff's federal claims revolve around the Order of President Judge Raymond Hamill of the Court of Common Pleas of Wayne County who, on motion of Defendant Edwards (Doc. 22-1, "Ex. 1 Mikulak"), issued an Administrative Order (Doc. 22-1, "Ex. 2 Mikulak") transferring "all Commonwealth Matters subject to the jurisdiction of Magisterial District 22-3-02 originating from the Honesdale Borough Police Department" to "the jurisdiction of Magisterial District 22-3-04 until further Order of Court." President Judge Hamill, in issuing this Order, acted pursuant to the supervisory authority conferred on him as President Judge over District Justices. Pursuant to Rule of Judicial Administration 605 ("Supervision of magisterial district courts by president judges"):

> The president judge of the court of common pleas of a judicial district shall exercise general supervision and administrative authority over magisterial district courts within the judicial district.

201 Pa. Code Rule 605(A). Further, Rule 605 addresses "Temporary Assignments: Transfer of Cases" as follows:

> In consultation with the affected magisterial district judge(s), the president judge may order temporary assignments of magisterial district judges or reassignment of cases or certain classes of cases to other magisterial districts within the judicial district or to central courts within the judicial district.

*Id.* at 605(B)(6). Here, President Judge Hamill expressly founded his Administrative Order on the authority granted to him in the above quoted language of 605(B)(6).

This authority of the president judge to issue directives to district justices in the judicial district over which the president judge exercises general supervision and

9

administrative authority has been recognized by the Third Circuit. Thus, in *Swinehart v. Hon. R. Barry McAndrews*, 69 F. App'x. 60 (3d. Cir. 2003), an elected county constable brought suit pursuant to § 1983 alleging that the president judge of the Seventh Judicial District of Pennsylvania had violated his due process rights by issuing a directive to all state district court judges in Bucks County which instructed them not to give Swinehart additional assignments to serve warrants. The District Court granted summary judgment for the Defendants and the Third Circuit affirmed. The Plaintiff had argued that as a constable, he was an independent contractor who did not receive a salary but instead was paid on a per job basis. Thus, Plaintiff asserted that the property interest of which he was deprived by the Defendants' actions was "his right to have his services sought, state wide, without restriction." *Id.* at 63.

The Court of Appeals, in affirming the District Court, stated:

> We agree with the District Court that the state court's directives were consistent with the supervisory authority of Judge McAndrews, as president judge, over justices within the Seventh Judicial District. While the directives may have made it more difficult for Swinehart to secure work from other sources, defendants did not deprive him of a protected property interest by issuing them because plaintiff has no constitutional property interest in receiving assignments in the Seventh Judicial District or elsewhere. "It is the liberty to pursue a particular calling or occupation and not the right to a specific job that is protected by the Fourteenth Amendment." *Piecknick v. Commwealth of Pennsylvania*, 36 F.3d [1250, 1262 (3d Cir. 1994)].

*Id.*

Plaintiff's assertions as to his property interest in the district justice position and his claim of a deprivation of that interest by the defendant has required the Court to address an

10

issue that can fairly be described as an unnecessary detour in the analysis of this case. For here, Plaintiff has only alleged a claim against Edwards in her individual and official capacities as District Attorney. Judge Hamill, not Edwards, is the person who entered the Administrative Order directing the transfer of cases originating from the Honesdale Borough Police Department from Mikulak to a different Magisterial District Judge. Further, Edwards was not the individual who had the power to grant Plaintiff a hearing to determine whether the cases involving the Honesdale Borough Police Department should be returned to him.

The constitutional claims which Plaintiff Mikulak raises are thus misdirected at Defendant Edwards. Whatever procedural due process Mikulak may have been entitled to beyond that which he was already afforded through the Judicial Conduct Board requires an assessment of the responsibility, if any, that President Judge Hamill had to return to Mikulak those cases which had been transferred from him to the jurisdiction of another magisterial district "until further Order of Court." If Plaintiff was entitled to a hearing at which he could seek the return to him of cases involving the Honesdale Borough Police, the unavoidable fact is that such a hearing could not be granted by Defendant Edwards. It was solely within the purview of the president judge to do so.

Examining Plaintiff's claim against Edwards in her official capacity, which is in reality a claim against Wayne County, Plaintiff encounters a similar problem. Wayne County cannot be held liable for any alleged deprivation of a property interest because it was Judge Hamill, acting within the scope of his duties as the president judge, who both removed

11

certain cases from Plaintiff and then did not return the cases to Plaintiff or provide him with

a hearing. Even if the Court were to accept that Plaintiff was deprived of adequate remedial

procedures, the Magisterial Judge position is not one under the supervision of the Wayne

County District Attorney. Rather, the judiciary is a branch of the Pennsylvania state

government. *See* 42 Pa.C.S.A. § 301 ("The judicial power of the Commonwealth shall be

vested in a unified judicial system consisting of the: . . . (9) Magisterial district judges.");

*Callahan v. City of Philadelphia*, 207 F.3d 668, 674 (3d Cir. 2000) (recognizing that "while,

as the judicial defendants recognize, . . . we seem not to have decided the issue in any

published precedential opinion, the district courts repeatedly have held that all components

of the judicial branch of the Pennsylvania government are state entities and thus are not

persons for section 1983 purposes.")[6]. *See also*, *Mannin v. Carter*, 2013 WL 324212, at *8

(M.D. Pa. 2013) ("It is [*sic*] appears that Plaintiff believes that the Magisterial District Judges

may be employed by the Borough and County. Magisterial District Judges in the

Commonwealth of Pennsylvania are elected by the people and paid by the Commonwealth

of Pennsylvania."). As such, the Wayne County and its District Attorney cannot be held

liable for a policy of the judiciary, which they could not and did not promulgate, and over

[6] As the Third Circuit explained in *Callahan*:
The Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. Moreover, the constitution provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Philadelphia Municipal Court, are part of "Commonwealth government" and thus are state rather than local agencies. *See* Pa. Const. art. V, § 6(c); 42 Pa. Cons.Stat. Ann. § 102 (West Supp.1999); 42 Pa. Cons.Stat. § 301 (West 1981).
*Callahan*, 207 F.3d at 672.

which they had no control, or for the actions of President Judge Hamill who exercised his

judicial authority pursuant to Rule 17(B)(6) of the Rules Governing Standards of Conduct of

Magisterial District Judges to transfer cases from then Magistrate Mikulak, *see* Pa.R.M.D.J.

17(B)(6), now re-codified as 201 Pa. Code Rule § 605(B)(6).

The Court next turns to Mikulak's stigma-plus claim contained within Count I of his

Complaint. In light of Plaintiff's representation that he did not bring any substantive due

process claim, Plaintiff's stigma plus claim is necessarily brought as a second procedural

due process claim. Drawing all inferences in Plaintiff's favor and reading Plaintiff's

Complaint as broadly as possible, Plaintiff has raised a procedural due process stigma-plus

claim alleging that Edwards deprived him of a liberty interest in his reputation. As such,

Plaintiff properly states that Defendant did not specifically move for summary judgment on

his stigma-plus claim. However, despite Defendant's misunderstanding of Count I, and

resulting incorrect legal and factual analysis, Plaintiff's claim cannot proceed to trial as

Plaintiff cannot establish the basic elements necessary to establish a stigma-plus claim.

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life,

liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. The

Supreme Court has held that a person possesses a protected liberty interest in their

reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). The Supreme

Court later clarified, however, "that reputation alone is not an interest protected by the Due

Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v.*

*Davis*, 424 U.S. 693 (1976)). Rather, "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Id*. Therefore, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (emphasis original). This showing has become known as the "stigma plus" test. *Graham v. City of Philadelphia*, 402 F.3d 139, 142 n.2 (3d Cir. 2005).

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Hill*, 455 F.3d at 236 (internal citations omitted). "To satisfy the 'plus' requirement, a plaintiff must demonstrate that the alleged defamation harming plaintiff's reputation 'occurs in the course of or is accompanied by extinguishment of a right or status guaranteed by law or the Constitution.'" *Mun. Revenue Servs., Inc. v. McBlain*, 2007 WL 879004, *4 (E.D. Pa. 2007) (quoting *Hill*, 455 F.3d at 235), *aff'd* 347 F.App'x 817 (3d Cir. 2009).

Here, Mikulak's claim fails for the reasons stated in Magistrate Judge Carlson's R&R (Doc. 30) and for the further reasons that neither Edwards nor Wayne County were Mikulak's employer and that the action taken to remove Borough of Honesdale police cases from Milkulak as well as the decision not to return those cases to him were decisions made by President Judge Hamill in accordance with the supervisory and managerial authority granted to him under Rule 605.

Plaintiff's stigma-plus claim could only have arisen from President Judge Hamill's Administrative Order filed to number 3-2013 MD (Doc. 22-1, "Ex. 2 Mikulak") dated March 22, 2013. In that Order the President Judge, acting pursuant to "Rule 17 (B)(6) of the Rules Governing Standards of Conduct of Magisterial District Judges and the authority vested in the President Judge of a judicial district" transferred jurisdiction of all matters originating from the Honesdale Borough Police Department from the jurisdiction of Plaintiff to another magisterial district "until further Order of Court." Thereafter, Plaintiff complains that the cases were not returned to him upon the conclusion of his probationary period and mentorship imposed on him by the Judicial Conduct Board and the Board's subsequent dismissal of the complaint against him. Thus, may it be said that Mikulak's claim of defamation was accompanied by a "change or extinguishment of a right or status guaranteed by state law or the constitution"? *Clark,* 890 F.2d at 619. Given that Mikulak was not disciplined, suspended, or removed from the position of magisterial judge and further given that the President Judge's removal of cases related to the Honesdale Borough Police was pursuant to an Order expressly undertaken by the authority granted him under 201 Pa. Code 605 (B)(6), Plaintiff has failed to establish a triable dispute of fact that he suffered a stigma-plus due process violation.[7]

---

[7] Courts have found certain statements – which are more stigmatizing on their face than any statement at issue here – fall short of invoking a liberty interest. *See, e.g., Brown v. Montgomery Cty.,* 470 F.App'x 87, 90-91 (3d Cir. 2012) (holding that public statement by employer that employees conduct constituted "malfeasance" was "not sufficiently stigmatizing to implicate a liberty interest."); *Kohn v. Sch. Dist. of City of Harrisburg,* 817 F.Supp.2d 487, 498 (M.D. Pa. 2011) (finding that questioning an employee's "competency and job performance . . . is insufficient to satisfy the stigma part of the stigma-plus test");

The claims that Plaintiff has leveled against Defendant Edwards deliberately ignore the unquestionable fact that Edwards was not his employer and the actions taken to remove certain cases from him as well as the decision not to return those cases to him were those taken by President Judge Hamill, not Edwards. The Plaintiff makes no claim against President Judge Hamill and, indeed, nor could he for clearly Judge Hamill, acting in his judicial capacity, would be entitled to absolute immunity. Furthermore, with respect to Edwards, this Court also adopts the thorough analysis undertaken by the Magistrate Judge establishing that Edwards' "official petitioning activity is entitled to absolute prosecutorial immunity" (Doc. 30, at 19) and that she would likewise be entitled to qualified immunity were absolute immunity not afforded to her.

Finally, with respect to each of Plaintiff's constitutional claims contained in Counts I and II, for the reasons set forth *infra*, the Court agrees with Magistrate Judge Carlson that Edwards' "letter" to Judge Hamill was not improper and cannot form the basis for any constitutional liability. To the extent that Plaintiff's due process and stigma-plus claims are premised on this "letter", it again must be noted that Judge Hamill, not Edwards, entered the Administrative Order directing the transfer of cases originating from the Honesdale Borough Police Department from Mikulak to a different Magisterial District Judge.

---

*Poteat v. Harrisburg Sch. Dist.*, 33 F.Supp.2d 384, 393 (M.D. Pa. 1999) ("Charges of incompetence do not implicate the liberty interest a public employee has in the manner of discharge").

## Objection 8 – Plaintiff stated a First Amendment retaliation claim

Plaintiff further asserts in his Objections that he "stated a claim for First Amendment retaliation since he spoke out about law enforcement corruption and responded to defamatory statements made by Defendant Edwards, which are matters of public concern." (Doc. 32, at 19).

> To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *See, e.g., Phyllis Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005). The first factor is a question of law; the second factor is a question of fact. *Curinga v. City of Clairton,* 357 F.3d 305, 310 (3d Cir. 2004).

*Hill,* 455 F.3d. at 241.

Plaintiff's one and one-half page argument in support of his objection to the Magistrate Judge's determination that Plaintiff suffered no First Amendment retaliation fails for several reasons. First, it bears repeating that President Judge Hamill's Administrative Order transferring from the Plaintiff's magisterial district matters relating to the Honesdale Borough Police was issued March 22, 2013. It was issued in response to the motion filed by Defendant Edwards as the District Attorney for Wayne County. The motion sets forth allegations against the Plaintiff in support of her request for the reassignment of all "Commonwealth matters that fall within MDJ Mikulak's jurisdiction" to a different Wayne County magisterial district (Doc. 22-1, "Ex. 1 Mikulak"). This Court adopts the Magistrate Judge's incisive analysis and conclusion that the actions of Edwards, in filing a formal petition for specific relief with the President Judge who had supervisory authority over

Magisterial District Judge Mikulak and seeking relief in the form of recusal of Mikulak in criminal proceedings involving the Honesdale Borough Police Department, were entitled to "absolute prosecutorial immunity." (Doc. 30, at 14-19).

Likewise, this Court adopts the analysis of the Magistrate Judge affording qualified immunity to Edwards and specifically the Magistrate Judge's reasoning that:

> In this case, the Court is unaware of any existing precedent that would have placed the District Attorney on notice that by filing a formal petition with the Court of Common Pleas seeking the plaintiff's recusal in certain proceedings because of perceived bias that she would have been violating a clearly established law. Quite the contrary, the Rules Governing Standards of Conduct of Magisterial District Judges expressly enjoin these judicial officers to act with impartiality and fairness, and forbid them from displaying any form of bias or prejudice . . . . Moreover, the vehicle used by the district attorney in this case to raise these legal and ethical concerns was in the nature of a motion for recusal. This action seeking recusal of a judicial officer based upon allegations of bias was consistent with state practice, which plainly permits parties to seek recusal of judicial officers. Indeed, a legally and factually unjustified refusal to recuse from a case may in some instances expose a magisterial district judge to disciplinary action.

(Doc. 30, at 21-22).

Further, as reflected in the R&R, Mikulak acknowledged in a letter to President Judge Hamill that he had engaged in conduct which warranted recusal, stating that:

> Certain statements made regarding the integrity of specific HBPD officers were understandably perceived as bias toward the entire department. Inappropriate statements made in the heat of the moment reflected poorly on myself as well as the judiciary as a whole . . . .
>
> I deeply regret my errors and the negative perceptions created. I willingly accept responsibility for my actions without excuse. I initiated positive steps in an effort to improve circumstances regarding previously reflected negativity or bias. . . .

(Doc. 22, Ex. G, at 1).

In Plaintiff's objections to the Magistrate Judge's determination, he makes the unfounded and unsupported statement that he engaged in protected speech "when he exposed law enforcement corruption and when he responded to defamatory statements made by Defendant Edwards about 'Judge questions case ban.[']" (Doc. 32, at 19). There is nothing in the record of this case to show that there exists a genuine dispute of material fact that the Plaintiff made any statement for the purpose of exposing, or which in fact did expose, "law enforcement corruption."

When addressing whether certain statements by Edwards were defamatory, the statements detailed by Plaintiff in his brief in support of his Objections (see Doc. 32, at 8-14) present nothing more than Mikulak's own deposition testimony wherein he denies the allegations presented in Edwards' motion to President Judge Hamill for Mikulak's recusal. Nowhere in Mikulak's referenced testimony or exhibits is there any indication of a statement that can reasonably be characterized as a statement in which he "exposed law enforcement corruption." Additionally, there is absolutely no evidence of record to create a genuine dispute of fact showing that, even if Plaintiff had engaged in protected activity, he suffered any retaliatory action. As noted previously, the Defendant's motion for recusal presents conduct for which Edwards, acting in her prosecutorial function, enjoys absolute immunity. President Judge Hamill's March 22, 2013 Order transferring cases from Plaintiff that involved the Honesdale Borough of Police was issued long before the issuance by Edwards

of her statement to the *Scranton Times* (Doc. 22-2, Ex. 30(B)(6)(K)), portions of which were quoted in the *Scranton Times* newspaper article of May 15, 2015 (*Id.* at 30(B)(6)(L)).

Wholly apart from the fact that this Court agrees with the Magistrate Judge's R&R that neither Defendant's statement to the *Scranton Times* nor the *Scranton Times* article was defamatory, the fact remains that Plaintiff suffered no adverse action as a result of Edwards' statement to the newspaper or the *Scranton Times* article published in May of 2015. It simply cannot be said that Plaintiff suffered some "adverse action" as a consequence of either Edwards' statement or the newspaper article following it.

For the reasons set forth herein, and in the R&R, the Court will overrule Plaintiff's Objection that disputes of material fact exist as to his First Amendment claim.

### Objection 1 – "The letter to Judge Hamill was not a judicial document"

Plaintiff also argues that the Magistrate Judge erred in concluding that "the letter to Judge Hamill" from Edwards was a judicial document. However, Magistrate Judge Carlson never specifically stated that the "letter" was a "judicial document". Rather, the R&R persuasively found that:

> The evidence reflects that the defendant did not merely "write a letter" – she filed a formal petition for specific relief with the President Judge who had supervisory authority over Magisterial District Judge Mikulak, and she sought specific relief in the form of recusal of that judicial officer in criminal proceedings originating out of the Honesdale Borough Police Department. (Doc. 22, Ex. C.) Although it is true that the District Attorney did not file this petition with respect to a specific or ongoing criminal matter, we conclude that the act of filing a petition for relief regarding ongoing and future criminal proceedings goes to the very heart of the judicial function, the necessity of a neutral and detached arbiter, and thus constitutes the kind of quasi-judicial

20

activity entitled to absolute immunity because it is "intimately associated with the judicial phases of litigation." *Giuffre*, 31 F.3d at 1251. The petition itself sought specific judicial relief in all future criminal proceedings that the District Attorney was responsible for prosecuting within Wayne County on behalf of the Commonwealth, and it was filed because of serious concerns that Magisterial District Judge Mikulak was not conducting himself in an impartial manner with respect to criminal matters coming before him involving the Honesdale Borough Police Department.

(Doc. 30, at 17-18). Plaintiff offers no case law or substantive legal argument to dispute the Magistrate Judge's conclusions. Rather, Plaintiff simply attempts to define what constitutes a "judicial record" and argues that "there is an issue of fact whether the document in question was a judicial document." (Doc. 32, at 2-3). This Court disagrees for the reasons set forth above in the R&R.

Furthermore, Plaintiff's argument and singular focus on the exact nature of "the letter" itself indicates a belief on his part that in the absence of a "judicial record", a prosecutor is never entitled to absolute immunity. Plaintiff errs in suggesting that the availability of absolute immunity is so narrowly tailored. Case law makes clear that while a prosecutor "bears the 'heavy burden' of establishing entitlement to absolute immunity", a prosecutor is entitled to absolute immunity for actions performed in a judicial or quasi-judicial capacity. *See Odd v. Malone*, 538 F.3d 202, 207-208 (3d Cir. 2008). This is clearly not only limited to situations where, as Plaintiff seems to suggest, a judicial record has been filed. Rather, the Third Circuit has "rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.* pre- or postindictment), or its location (*i.e.* in- or out-of-court), as dispositive." *Odd*, 538 F.3d at 210. Additionally, as Magistrate Judge Carlson noted, "in

21

some contexts, prosecutors may be entitled to absolute immunity even for actions that may have an administrative element to them" (Doc. 30, at 16 n.1) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009)).

As a result, Plaintiff has failed to raise any legal argument in his Objections to refute the Magistrate Judge's conclusion that Edwards is entitled to absolute immunity in her individual capacity or to demonstrate a material dispute of fact on this issue.

### Objection 2 – Defendant is not entitled to qualified immunity

Assuming *arguendo* that Defendant Edwards is not entitled to absolute immunity, the Court further agrees with the Magistrate Judge that she is entitled to qualified immunity in her individual capacity. The Court will thus turn to the issue of qualified immunity. *See Odd*, 538 F.3d at 207-208 ("In light of the Supreme Court's 'quite sparing' recognition of absolute immunity to § 1983 liability, we begin with the presumption that qualified rather than absolute immunity is appropriate.").

Plaintiff seemingly asserts three bases for his objection with respect to the R&R's conclusion that Edwards is entitled to qualified immunity: (1) Defendant did not move for summary judgment on qualified immunity; (2) qualified immunity does not apply to Edwards in her official capacity; and (3) Edwards' "letter to Judge Hamill and her statements to the press" are not protected.

Plaintiff's first argument is without merit. Although Defendant did not address the issue in her brief in support of the motion for summary judgment, Defendant specifically

asserted that she "is immune from suit under the doctrine of Qualified Immunity" in her motion for summary judgment (Doc. 22, at ¶ 39). Defendant's Answer also includes as an Affirmative Defense that "Plaintiff's claim is barred by the Doctrine of Qualified Immunity" (Doc. 21, at ¶ 43). Furthermore,

> in appropriate circumstances, the court may consider qualified immunity *sua sponte*. *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by the United States Magistrate Judge). Specifically, the Court is vested with the authority to *sua sponte* grant summary judgment on grounds not raised by the Defendants, such as qualified immunity, so long as the non-moving party has notice and an opportunity to be heard. The issuance of a report and recommendation, together with the objection period following entry of a report and recommendation, have been found to satisfy the notice and response requirements. *Watts v. Herbick*, No. Civ. A. 07-824, 2009 WL 3152089, at *7 n.9 (W.D. Pa. Sept. 28, 2009), *aff'd sub nom. Watts v. Herbik*, 364 Fed. Appx. 723 (3d Cir. 2010).

*Njos v. Carney*, 2017 WL 3217690, *1 n.1 (M.D. Pa. 2017). Here, Plaintiff was repeatedly placed on notice that Defendant was asserting qualified immunity as a defense to Plaintiff's claims, and, irrespective of this notice, Plaintiff's opportunity to file Objections to the R&R's analysis of qualified immunity provided him with adequate notice and opportunity to be heard on this issue. Plaintiff's brief and jumbled three paragraph discussion of the issue of qualified immunity was his decision alone and Plaintiff has in no way been deprived of an opportunity to be heard on this issue.

Plaintiff's second argument bears the need for a more significant discussion. Although Plaintiff's entire argument consists of the one sentence, "Additionally, qualified immunity does not apply to Defendant Edwards in her official capacity" (Doc. 32, at 3),

23

Plaintiff's lack of any case citation or further legal analysis does not diminish the accuracy of this assertion.

Defendant counters Plaintiff's argument by stating that "Plaintiff ignores the fact that Judge Carlson *already* found Edwards' actions to be immune from suit under the doctrine of absolute prosecutorial immunity and only addressed qualified immunity as an alternative basis for Edwards' immunity from suit [and t]herefore, Judge Carlson properly recommended that all claims against Edwards, in both her official and individual capacities, be dismissed." (Doc. 36, at 5) (emphasis in original). This argument, which also lacks any citation to case law, fails. The Supreme Court has explicitly explained that, while absolute and qualified immunity are available in personal-capacity actions, because an official-capacity action is really one against the government entity, "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Here, Defendant did not raise Eleventh Amendment immunity as an affirmative defense, nor did she ever discuss this immunity in her motion for summary judgment or accompanying brief, and thus has failed to carry her burden of establishing that in her official capacity, she, *i.e.* Wayne County, is entitled to any such immunity.

The Court must interpret Plaintiff's federal claims against Edwards in her official capacity as claims against Wayne County for *Monell* liability.[8] Here, Plaintiff sued

---

[8] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Defendant Edwards in her individual and official capacities, but did not sue Wayne County, Defendant's employer. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky,* 473 U.S. at 166. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165. Therefore, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* at 166 (quoting *Polk County v. Dodson,* 454 U.S. 312, 326 (1981)). Thus, because this action against Defendant Edwards in her official capacity is, in reality, a suit against Wayne County, and assuming that Wayne County had notice of the action,[9] the County may be held liable for any claims asserted by Plaintiff subject to *Monell.*

Nowhere in Plaintiff's Complaint, brief in opposition to summary judgment, or Objections to the R&R, does he reference *Monell* (*see generally,* Docs. 1, 26, 32). Yet Plaintiff clearly attempted to assert a *Monell* claim against Wayne County, as evidenced by several allegations in the Complaint, including that Edwards "was an official policymaker", "engaged in official policy, custom, and decisions to violate Plaintiff's First Amendment rights of Free Speech and Due Process" and that "Wayne County acquiesced in all

---

[9] Because this Court finds, *infra,* that any *Monell* claim that Plaintiff may have brought against Wayne County fails, for purposes of Defendant's motion for summary judgment only, the Court will assume that Wayne County had notice and the opportunity to respond.

retaliatory and due process actions taking by its public officials and personnel since it had knowledge of the same and refused to intervene and stop the defamation and deprivations." (Doc. 1, at ¶¶ 3-5). Plaintiff's use of this formulaic language is the conclusory boiler plate of any *Monell* claim.

As the Supreme Court explained over 30 years ago, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell . . .* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky*, 473 U.S. at 167 n.14. Plaintiff's counsel, an experienced attorney, is well-aware of this fact, as evidenced by the numerous cases that she has litigated wherein she named the local government entity as a defendant. Plaintiff's cursory passing reference at this stage of the litigation to the fact that "qualified immunity does not apply to Defendant Edwards in her official capacity", and absence of any reference to *Monell* throughout the course of this litigation, is troubling since Plaintiff clearly seems to have had a *Monell* claim in mind but chose to call no attention to it, perhaps in the hope of that claim escaping judicial scrutiny.

Due to Plaintiff's tactics, the Magistrate Judge did not address the merits of any *Monell* claim, causing this Court to issue an Order (Doc. 37) directing the parties to brief the issue of whether any genuine disputes of material fact exist as to the liability of Janine Edwards in her official capacity, *i.e.* Wayne County, with respect to Counts I and II of Plaintiff's Complaint. The parties having complied with this Order (*see* Docs. 40, 41), the Court turns to that issue.

A municipality may be held liable under § 1983 when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers", including "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. 658, 690-691. However, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

Supreme Court precedent has held that the policy requirement is satisfied:

> where no rule has been announced as "policy" but federal law has been violated by an act of the policymaker itself. In this situation, the choice of policy and its implementation are one, and the first or only action will suffice to ground municipal liability simply because it is the very policymaker who is acting. *See Pembaur, supra,* at 480-481, 106 S.Ct., at 1298-1299; *cf. Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 250-252, 101 S.Ct. 2748, 2751-2752, 69 L.Ed.2d 616 (1981) (implicitly assuming that a policymaker's single act can sustain § 1983 action); *Owen v. Independence,* 445 U.S. 622, 625-630, 100 S.Ct. 1398, 1402-1405, 63 L.Ed.2d 673 (1980) (same). It does not matter that the policymaker may have chosen "a course of action tailored [only] to a particular situation and not intended to control decisions in later situations," *Pembaur,* 475 U.S., at 481, 106 S.Ct., at 1299; if the decision to adopt that particular course of action is intentionally made by the authorized policymaker, "it surely represents an act of official government 'policy'" and "the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly," *ibid.*

27

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 417-418 (1997) (Souter, J., dissenting).[10]

For purposes of the necessary *Monell* analysis here, Defendant Edwards, as District Attorney of Wayne County is a policymaker for that office. "Under the law of Pennsylvania, the District Attorney is the chief law enforcement officer in the county for which he or she is elected, and is one of the elected officers of the county." *Payson v. Ryan*, 1992 WL 111341, *11 (E.D. Pa. 1992). Edwards' filing of a petition for recusal was an action that violated no constitutional prohibition and which, instead, was an action carried out entirely within the authority of her office and which, as this Court has held in adopting the Magistrate Judge's R&R, was the discharge of a prosecutorial function for which she enjoys absolute immunity. While an act of a policymaker itself may present a *Monell* violation, the act here by Edwards offended no constitutional principle and was well within her prosecutorial function.

With respect to Plaintiff's third basis for his objection with respect to the R&R's conclusion that Edwards is entitled to qualified immunity – that Edwards' "letter to Judge Hamill and her statements to the press" are not protected – this argument also fails.

As the Magistrate Judge explained: "[t]he evidence reflects that the defendant did not merely 'write a letter' – she filed a formal petition for specific relief with the President Judge

---

[10] The Court cites Judge Souter's dissent not for its ultimate conclusions, but for his summary of Supreme Court precedent and explanation of *Monell*'s application in a case such as the one presently before the Court. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 n.10 (3d Cir. 2003) (citing Justice Souter's dissent "for its cogent and concise summary of the three situations in which a policy or custom sufficient to impose liability may arise.").

who had supervisory authority over Magisterial District Judge Mikulak, and she sought specific relief in the form of recusal of that judicial officer in criminal proceedings originating out of the Honesdale Borough Police Department. (Doc. 22, Ex. C)." (Doc. 30 at 17-18). As explained immediately above, Edwards' filing of this petition was an action that violated no constitutional prohibition and rather was an action carried out entirely within the authority of her office and which was the discharge of a prosecutorial function for which she enjoys absolute immunity.

Finally, with respect to the Defendant's statement to the *Scranton Times*, for the reasons set forth at length in the R&R, this Court agrees that the statement is not defamatory, and thus Plaintiff suffered no First Amendment Constitutional violation on this basis.

Here, while acknowledging that Wayne County is not entitled to qualified immunity, for the reasons set forth extensively in this opinion and the R&R, Edwards did not violate any constitutional rights that Mikulak may have possessed under the First and Fourteenth Amendments, and Plaintiff has failed to present any record evidence to create a triable issue of fact as to the County's liability.[11]

---

[11]Although Plaintiff does not raise such an argument, the Court acknowledges that Edwards is not entitled to qualified immunity on Mikulak's stigma-plus due process claim "to the extent that claim requests a name-clearing hearing, because the defense of qualified immunity is available only for damages claims – not for claims requesting prospective injunctive relief." *See Hill v. Borough of Kurtztown*, 455 F.3d 225, 244 (3d Cir. 2006).

### Objection 3 – "Prosecutorial absolute immunity was not established";
### Objection 6 – "Conditional privilege does not exist since Defendant Edwards was not acting for a proper occasion, motive, or manner"

The Court has already reviewed Plaintiff's objections with respect to the recommendation of the Magistrate Judge that Defendant Edwards is entitled to prosecutorial absolute immunity or in the alternative qualified immunity. That explanation and analysis will not be repeated here other than to note that we reject Plaintiff's assertion that Defendant Edwards "was not acting as prosecutor when she sent the letter to Judge Hamill that was not associated with any judicial matter pending" (Doc. 32, at 6). The cases cited by Plaintiff are unavailing since Plaintiff attempts to advance those cases for the proposition that Defendant Edwards was engaged in administrative rather than prosecutorial activity, a version of the facts of record which this Court rejects.

### Remaining Objections – Plaintiff's State Law Claims

As the R&R correctly states, Count III of Plaintiff's Complaint is the only claim alleging a violation of Pennsylvania law, asserting a cause of action for defamation and false light invasion of privacy. (Doc. 30, at 26). Because this Court has adopted the recommendations of the Magistrate Judge for the dismissal of the Plaintiff's federal claims, it will also adopt the Magistrate Judge's recommendation that it decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims in accordance with the provisions of 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

For the reasons set forth above, upon *de novo* review of Magistrate Judge Carlson's R&R (Doc. 30), the Court will adopt the R&R and overrule Plaintiff's Objections. The Court will grant summary judgment in favor of the Defendant, Janine Edwards, and against the Plaintiff, Ted Mikulak, on Counts I and II of the Complaint. The Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims set forth in Count III of his Complaint and that Count will be accordingly dismissed without prejudice. A separate Order follows.

Robert D. Mariani
United States District Judge